NORMAN MAIS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2094–66.    Filed December 30, 1968.

*Lawrence Holzman* and *David W. Feeney*, for petitioner.
*Agatha L. Vorsanger*, for respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax against the petitioner for the taxable year 1960 in the amount of $6,761.92.

The issue presented is whether under the circumstances presented petitioner for his taxable year 1960 is taxable upon the portion of amounts embezzled by him from his employer in that year which he did not repay during such year.

## FINDINGS OF FACT

The petitioner, an individual, resided in New York City, at the time he filed his petition. He filed his Federal income tax return for the taxable year 1960 with the district director of internal revenue, Manhattan, New York, using the cash receipts and disbursements method of accounting.

During the first half of 1960, the petitioner was employed as a stock transfer clerk by Bache & Co., a stock-brokerage firm (hereinafter referred to as Bache). His duties consisted of receiving securities sold by either Bache or its customers and arranging for the transfer of such securities into the names of the new owners who would be either other private investors or Bache. Sometime during the first 5 months of 1960, petitioner, acting in concert with others, embezzled certain securities from Bache. Such securities were then sold and petitioner received as his portion of the proceeds the amount of $28,557.40.

Of the amount so received the petitioner invested between $6,000 and $7,000 in other securities. Such other securities were purchased in the name of his brother-in-law, Balfour Schwartzseid, and were apparently left with the broker through whom they were purchased. Of the remainder petitioner gave Schwartzseid $10,700 to hold for him, spent between $2,000 and $4,000 on clothing and a vacation trip, and made gifts of an undetermined sum.

In June 1960, Bache discovered that some of its securities had not been returned to it by the transfer agent and petitioner's supervisors began an inquiry. Shortly thereafter, a number of Bache employees, including petitioner, were called into the local district attorney's office for questioning. When he was first questioned about the securities, petitioner did not admit that he had taken them. However, the next morning he voluntarily went to the district attorney's office and confessed everything that had happened. He told an assistant district attorney that he still had a portion of the proceeds, namely, the $10,700 he had given to Schwartzseid to hold and the securities he had purchased in Schwartzseid's name. He also told the assistant district attorney that he wanted to give back everything he had taken. However, at that time, the petitioner knew that he did not have available for restitution the portion of the proceeds which he had spent. Schwartzseid was brought to the district attorney's office and

told the assistant district attorney about the $10,700 of cash which he was holding for petitioner and about the securities which were in his name, but which were not in his physical possession. He told the assistant district attorney that this was the extent of his involvement in the case. He turned over the $10,700 of cash to the New York police. He was not requested to, and did not, turn over the securities.

Shortly after his confession the petitioner retained an attorney, Alvin Tahlor, to represent him in connection with any criminal liability petitioner might have as a result of his actions.

Also shortly after petitioner's confession, a representative of an indemnity company, which presumably had insured Bache, called Schwartzseid and requested that the securities purchased by petitioner be turned over to him. Schwartzseid told such representative that he would have to consult an attorney first. Schwartzseid then called Tahlor, and Tahlor advised him not to turn them over, but rather to hold them and release them only when he or the petitioner so directed. Schwartzseid was not again asked for the securities, either by a representative of Bache or by the district attorney's office.

Petitioner also discussed with Tahlor the request of the indemnity company representative and told him that he wanted to give back whatever he had and make restitution. Tahlor told petitioner that if the district attorney's office or the court should ask for the securities, petitioner should instruct Schwartzseid to turn them over immediately, but that petitioner should not otherwise do so. Tahlor's advice was that the best procedure, because of its impact, would be to surrender the securities and make full restitution at the time of sentencing, after a plea of guilty. Schwartzseid continued to retain the securities in his own name and did not account to anyone regarding them during 1960. He received about $5 in dividends during the period he held the securities.

In August 1960, petitioner was indicted on several counts of grand larceny and pleaded guilty.

Early in 1961, petitioner retained another attorney, George M. Golden. Golden promptly obtained a power of attorney from Schwartzseid and sold the securities, realizing $15,708. He then placed the proceeds in a special bank account of his law firm, on the understanding with petitioner that he would turn such proceeds over to the court at the proper time. Petitioner was found guilty, and in February 1962, he was sentenced. About a week prior to that time, petitioner caused Golden to turn the $15,708 over to an officer of the probation department, for eventual restitution to Bache.

In his return for the taxable year 1960 the petitioner did not report any income resulting from the embezzlement.

In the notice of deficiency, the respondent determined that "the amount of $28,557.40 that you embezzled from your employer, Bache & Company, during the year 1960 is taxable income to you to the extent of $17,857.40 in the year 1960."

OPINION

The respondent determined that of the amount of $28,557.40 which petitioner received in 1960 as his share of the proceeds from the sale of securities which he embezzled, the amount of $17,857.40 is taxable to him in that year. The respondent did not treat as income $10,700 of such proceeds since in that year the petitioner relinquished that amount to the New York Police Department for restitution to Bache. As support for his determination that $17,857.40 is taxable to the petitioner in 1960, the respondent relies upon the proposition that embezzled funds constitute taxable income to the embezzler in the year of embezzlement, citing *James* v. *United States*, 366 U.S. 213. He also cites cases, including *Marvin E. Nerem*, 41 T.C. 338, and *Geiger's Estate* v. *Commissioner* (C.A. 8) 352 F. 2d 221, certiorari denied 382 U.S. 1012, affirming a Memorandum Opinion of this Court, to show that the principle of the *James* case applies retroactively to years prior to 1961, the year the *James* case was decided by the Supreme Court. He also contends that despite any acknowledgement by an embezzler of an obligation to make restitution, the embezzler may reduce income only if, when, and to the extent actual repayment of the embezzled funds is made, relying upon language used by the Supreme Court in the *James* case. The Court there stated in part:

> When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *North American Oil* v. *Burnet, supra,* at p. 424. In such case, the taxpayer has "actual command over the property taxed—the actual benefit for which the tax is paid," *Corliss* v. *Bowers,* supra [281 U.S. 376]. This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans. When a law-abiding taxpayer mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the taxpayer must nonetheless report the amount as "gross income" in the year received. *United States* v. *Lewis, supra; Healy* v. *Commissioner, supra.* We do not believe that Congress intended to treat a law-breaking taxpayer differently. Just as the honest taxpayer may deduct any amount repaid in the year in which the repayment is made, the Government points out that, "If, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income."

The respondent also cites Rev. Rul. 65–254, 1965–2 C.B. 50, in which the position was taken that a deduction is allowable for the repayment

of embezzled funds for the taxable year in which the repayment is made.[1]

The petitioner, on the other hand, contends that no portion of the $28,557.40 received by him in 1960 is properly includable in his gross income for that year. It is his position that the question here presented is not whether he is entitled to a deduction, but whether, under the circumstances presented, it should be considered that he was in receipt of taxable income in the taxable year 1960 as a result of his receipt of embezzled property. He claims that the *James* case establishes the proposition that the same tax treatment is to be accorded a dishonest taxpayer, such as an embezzler, as is accorded an honest taxpayer who acquires property under the mistaken belief that he is entitled thereto. He argues that a taxpayer is not in receipt of income in the year in which he receives property, whether legally or illegally, if he has an equivalent obligation to repay and if, within such year, he acknowledges such obligation. He points out that in the case of an embezzlement the embezzler has an immediate obligation imposed by law to repay an amount equal in value to the property taken. He contends that he did acknowledge in 1960 his obligation to repay the embezzled funds and evidenced a bona fide intent to repay, and that hence in that year he had no increment in wealth and therefore no income.

We believe that the respondent's determination is correct. We interpret the *James* case as meaning that any taxpayer who acquires property under circumstances which do not permit the conclusion that the property was received with a consensual recognition, express or implied, of an obligation to repay, and without restriction as to its disposition, is in receipt of taxable income. Certainly in the case of an embezzlement it cannot be considered that the funds are obtained by the embezzler under any consensual recognition of an obligation to repay; indeed, the victim of the embezzlement is unaware of the diversion of his property. The Supreme Court clearly recognized that in the case of an embezzlement the embezzler is in receipt of taxable income despite the fact that the embezzler has an unqualified duty and obligation to repay the money embezzled. The Court pointed out that even in the case of a law-abiding taxpayer who mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the amount received must be reported in gross

---

[1] Rev. Rul. 65-254 dealt with an employee who had embezzled funds from his employer in the years 1959 through 1961, and had repaid the amount embezzled when the embezzlement was discovered in 1962. It was there held that each of the several acts of embezzlement falls within the ambit of sec. 165(c)(2) of the Code, which provides for the deduction of "losses incurred in any transaction entered into for profit, though not connected with a trade or business." The revenue ruling accordingly held that a deduction is allowable under sec. 165(a) of the Code for the repayment of the embezzled funds for the taxable year in which the repayment is made.

income in the year received. The Court then went on to state in effect that in the case of either type of taxpayer any amount repaid may be deducted in the year in which the repayment is made.

As pointed out by the petitioner, we have held in *J. W. Gaddy*, 38 T.C. 943, reversed in part on other issues (C.A. 5) 344 F. 2d 460, that where a taxpayer mistakenly obtains funds to which he is not entitled and in the same year recognizes a fixed and definite obligation to repay and makes provision for such repayment, the amounts received are not to be considered as taxable income in the year of receipt. We think that case is clearly distinguishable from the instant case. Under the circumstances of the *Gaddy* case it was clear that under the agreement between the taxpayer and the payor there was an implied consensual recognition that any excessive receipts were to be repaid, and it was reasonable to conclude therein that when the taxpayer acknowledged this obligation in the same year he should not be considered as in receipt of income, even though repayment did not occur in such year. The obligation to repay in such circumstances is similar to the obligation to repay a loan. On the other hand, as heretofore stated, in the case of an embezzlement such as is here involved the embezzled funds are not obtained under any consensual agreement, express or implied. A mere acknowledgment on the part of the embezzler of his legal obligation to repay could not be considered as constituting a consensual agreement between him and his victim which would justify treating the embezzled funds as in any way similar to borrowed funds and hence excludable from gross income. Similarly, the case of *United States* v. *Merrill*, (C.A. 9) 211 F. 2d 297, cited by petitioner is also distinguishable, since in that case there was also an implied consensual recognition of an obligation to repay any overpayment.

The only relief available to the embezzler is to deduct from income of any year any amount repaid in such year in restitution. As indicated above, the respondent has given the petitioner credit for the repayment of $10,700 in the year 1960 by holding that the amount of $28,557.40 embezzled from Bache constituted taxable income to the petitioner only to the extent of $17,857.40 in the year 1960. We cannot conclude that the petitioner made any other repayment in the year 1960 which would entitle him to a reduction of his taxable income for 1960. Although in 1960 he disclosed the fact that between $6,000 and $7,000 of the proceeds from the sale of the embezzled securities had been invested in other securities and that such securities were held by a broker in the name of his brother-in-law, such securities were not turned over in 1960 to Bache & Co. or to any third party to be held for delivery to Bache & Co. Later, in 1961, the securities were sold for $15,708 and in 1962 the proceeds were paid to an officer of the court

for restitution to Bache. This realized enhancement in value of the securities apparently redounded to the benefit of the petitioner in satisfying to that extent his obligation to make restitution of the funds embezzled in 1960.[2]

We approve the respondent's determination.

*Decision will be entered for the respondent.*

---

[2] In 1960 when petitioner confessed to the embezzlement he had available from the proceeds embezzled only $10,700 in cash and securities which had cost between $6,000 and $7,000. Apparently he had expended the remainder of the embezzled funds amounting to between $10,000 and $12,000, and had thus had the benefit thereof.