Frank M. Hauser, Jr., and Mary M. Hauser v. Commissioner.
Hauser v. Commissioner
Docket No. 639-67.
United States Tax Court
T.C. Memo 1970-207; 1970 Tax Ct. Memo LEXIS 152; 29 T.C.M. (CCH) 908; T.C.M. (RIA) 70207; July 22, 1970, Filed *152 During the years 1961 through 1964, the 909 petitionerhusband embezzled money from his employer. The petitioners, husband and wife, executed joint returns for the years in issue and did not report any of the embezzled amounts. Held, for each of the taxable years 1961 through 1964: (1) The amounts embezzled by the petitioner-husband are includable in the petitioners' gross income; (2) No part of the underpayment by the petitioners is due to fraud; and (3) The liability of the petitioners for the tax is joint and several. W. Frank Taylor, John H. Kerr, III, and Lindsay C. Warren, Jr., P.O. Box 1616, Goldsboro, N.C., for the petitioners. J. Randall Groves, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The respondent determined deficiencies in the petitioners' income tax and additions to the tax under section 6653 (b) of the 1954 Code for the calendar years and in the amounts listed below: Year
Deficiency
Additions to TaxSec. 6653(b), 1954Code
1961
$1,354.34
$ 677.17
1962
1,016.32
508.16
1963
984.27
492.14
1964 862.47
431.24
TOTALS
$4,217.40
$2,108.71
The issues presented for our decision are (1) whether amounts embezzled by the petitioner-husband are includable in the *153 petitioners' gross income during the years in issue under section 61(a) of the 1954 Code; (2) whether any part of the deficiencies in question was occasioned by fraud with intent to evade tax for purposes of section 6653(b) of the 1954 Code; and (3) whether the petitioners are jointly and severally liable for the deficiencies and additions to the tax by virtue of their having filed joint returns under section 6013 of the 1954 Code. The petitioners concede that, if the respondent is upheld in his contentions respecting the aforementioned issues, the deficiencies and penalties appearing in the table above were correctly determined. Findings of Fact Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits thereto are incorporated herein by this reference. During the taxable years in question and at the time the petition herein was filed, petitioners Frank M. Hauser, Jr., and Mary M. Hauser, husband and wife resided at 1707 East Pine Street, Goldsboro, North Carolina. Frank and Mary executed joint income tax returns for each of the taxable years 1961 to 1964, inclusive, and caused the returns to be timely filed with the district director of *154 internal revenue at Greensboro, North Carolina. The execution of these returns was the voluntary act of each petitioner and was not occasioned by duress, mistake, trickery, or deception. Each petitioner intended to file a joint return. Frank was employed as the Tax Collector of the City of Goldsboro during the years under consideration and for many years prior thereto. In this capacity, Frank prepared yearly bills for taxes owing to the City of Goldsboro, mailed these bills to city taxpayers, and collected remittances. During the 1950's, Frank developed a method for embezzling portions of the tax payments he collected. He would alter his office's public records to reduce the amount of tax due from a given taxpayer, but he would mail the taxpayer a bill for the correct amount. When the taxpayer mailed in his payment for the correct tax liability, Frank would record payment of the reduced amount. He would then appropriate the difference for himself out of accumulated cash collections from other taxpayers. By this method Frank wrongfully converted to his own use and benefit the following amounts properly belonging to the City of Goldsboro: Year
AmountAppropriated
1961
$6,301.32
1962
4,694.31
1963
4,520.20
1964
4,440.19
*155 These amounts were not reported by the petitioners on their joint income tax returns for the years at issue. During the years 1961 through 1964 Frank had full control over the amounts he embezzled and enjoyed the benefits thereof. At no time during this period did he intend to return the money. In 1965, a shortage of the public funds administered by Frank was discovered, and an investigation by the North Carolina State Bureau of Investigation was conducted. As a result of these investigations, the Grand Jury of Wayne County, North Carolina, indicted Frank for the embezzlement of funds belonging to the City of Goldsboro during the years 1954 through 1965. 910 In December of 1965, Internal Revenue Agent Bearl Vick, who had become aware of Frank's embezzlement activities through the local news media, interviewed Frank about his income tax returns for the years in question. At this interview, Frank volunteered no information about the embezzled funds, and none of the financial records he showed to the agent reflected these amounts. When questioned by the agent how he was able to maintain his standard of living on the salary shown on the return, Frank stated that he had no other income *156 except that received from the City of Goldsboro. Vick then mentioned the publicity concerning the embezzlement and inquired why Frank had failed to report on his returns the money he had taken from the City. Frank replied that he had thought about filing amended returns after his embezzlement activities were exposed but that he had never done so. During the interview with the agent, Frank did not express surprise over the fact that the amounts he had wrongfully converted were taxable to him. Frank was not asked about nor did he comment on his knowledge or motivations at the times the returns in question were filed. On January 25, 1966, Frank entered a plea of nolo contendere to the charges of embezzlement in the Wayne County Superior Court. On January 27, he was sentenced to confinement in the state prison. Execution of the sentence was suspended, provided that Frank comply with certain conditions. One of these conditions was that Frank reimburse the City for the amounts he misappropriated, with interest. In compliance with this requirement in the order of sentence, the petitioners in 1966 paid an undisclosed amount of cash to the City and executed a note, dated January 28, 1966, *157 which was secured by a deed of trust on the petitioners' residence. On September 22, 1967, the petitioners paid to the City of Goldsboro the sum of $26,102.01, which amount was accepted by the City in full discharge of principal and accumulated interest on the note. In this manner the petitioners made full restitution of the amounts Frank had embezzled. Prior to 1966, petitioners had made no effort to restore these amounts. A statutory notice of deficiency was mailed to the petitioners, Frank M. Hauser, Jr., and Mary M. Hauser, on November 9, 1966, for the taxable years 1961 through 1964, inclusive. The respondent increased the petitioners' gross income in these years by the amounts Frank had appropriated from the City of Goldsboro, and the 50 percent addition to tax for fraud was asserted. Ultimate Findings of Fact (1) The petitioners had embezzlement income in the amounts determined by the respondent for the years 1961 through 1964. (2) No part of the underpayment of tax in the years 1961 through 1964 was due to the fraud of the petitioners. (3) The returns filed by the petitioners during the years 1961 through 1964 were validly executed joint returns. Opinion The first issue presented *158 for our decision is whether the respondent correctly included the amounts Frank embezzled in the petitioners' gross income for the years 1961 through 1964. On brief, the petitioners contend that, since Frank was at all times under an unqualified duty to make restitution to his employer and since he recognized this obligation and actually restored the funds prior to the respondent's determination, the money he embezzled should not be included in the petitioners' gross income. It is not totally clear what theory the petitioners employ to reach this conclusion, but their briefs seem to suggest that this result should follow from the fact that Frank did not hold the misappropriated amounts under a claim of right. Petitioners also allude to certain unstated "broad principles of equity * * * embodied in section 1341," [1] although they admit that that section would not benefit them in this case. [2] *159 We hold that the respondent correctly included the embezzled funds in the petitioners' income under section 61(a). [3] In James v. United States, 366 U.S. 213 (1961), the Supreme Court held that embezzled amounts are included 911 in the gross income of an embezzler in the year of the embezzlement. In so holding the Court overruled its prior decision in Commissioner v. Wilcox, 327 U.S. 404 (1946). Wilcox had held that an embezzler does not have a taxable gain because he does not hold the misappropriated funds under a claim of right. In the absence of a bona fide legal or equitable claim to the money, the Court had originally concluded that a taxpayer cannot be said to have received any gain or profit that would be subject to the income tax. In reversing Wilcox, the James case does not reach the conclusion that an embezzler has a claim of right to misappropriated funds. See 366 U.S. at pages 215 and also 216, footnote 7. James held that, regardless *160 of the claim of right test, an embezzler has taxable income because "in such case the taxpayer has 'actual command over the property taxed - the actual benefit for which the tax is paid,' Carliss v. Bowers * * *" 366 U.S. at page 219. While Frank may not have had a claim of right to the funds involved in the instant case, he used them year after year as he saw fit; he clearly had "actual command" over the money and the "actual benefit" from it. The result we reach in this case is similar to the one reached in Norman Mais, 51 T.C. 494 (1968). There, the taxpayer contended that no portion of the value of the property he embezzled was properly includable in his gross income in the year of embezzlement. He argued that a taxpayer does not receive income when he acquires property, legally or illegally, if he has an equivalent obligation to repay and if, in the year of receipt, he acknowledges this obligation. The taxpayer pointed out that an embezzler has an immediate obligation imposed by law to repay an amount equal in value to the property taken, and he alleged that he had in the year *161 of the embezzlement a bona fide intent to repay. We replied in part (at page 498): We believe the respondent's determination is correct. We interpret the James case as meaning that any taxpayer who acquires property under circumstances which do not permit the conclusion that the property was received with a consensual recognition, express or implied, of an obligation to repay, and without restriction as to its disposition, is in receipt of taxable income. Certainly in the case of an embezzlement it cannot be considered that the funds are obtained by the embezzler under any consensual recognition of an obligation to repay; indeed, the victim of the embezzlement is unaware of the diversion of his property. The Supreme Court clearly recognized that in the case of an embezzlement the embezzler is in receipt of taxable income despite the fact that the embezzler has an unqualified duty and obligation to repay the money embezzled. * * * In Mais, the taxpayer was permitted to deduct in the year of the misappropriation only those amounts he actually repaid in that year. The fact that the taxpayer recognized his obligation to make full restitution in that year and restored additional amounts *162 in later years had no bearing on the outcome of the case. In the present case, Frank did nothing to acknowledge his obligation to repay the embezzled amounts prior to his sentencing by the Wayne County Superior Court in 1966. There is no evidence of any nature to suggest that Frank intended merely to borrow the money from his employer.[4] We have found that at no time during the years in issue did Frank have any intention of returning the money. His recognition of his duty in a later year cannot be related back to the year of the conversion, L. M. Muldrow, 38 T.C. 907, 912 (1962), and cannot change the original legal character of his conduct from embezzling to borrowing, Norman v. Commissioner, 407 F. 2d 1337 (C.A. 3, 1969), affirming a Memorandum Opinion of this Court, certiorari denied 395 U.S. 947 (1969). Even if Frank had in some way acknowledged his obligation during the years in question, "a mere acknowledgment on the part of the embezzler of his legal obligation to repay could not be considered as constituting a consensual agreement between him and his victim which would justify treating the embezzled funds as in any way similar to borrowed funds and hence excludable from gross *163 income." Norman Mais, supra at page 499. [5]
We do not see how the petitioners' full repayment in 1966 and 1967, albeit prior to the issuance of the respondent's deficiency notice, has any effect on their tax liability for the years 1961 through 1964. Any amounts restored by the petitioners are 912 deductible in the taxable years when such restitution is made. James v. United States, supra at page 220; Norman v. Commissioner, supra at page 1338; Norman Mais, supra at page 499. See also Rev. Rul. 65-254, 1965-2 C.B. 50. Subsequent repayments have no bearing on liability in the years when the embezzlement occurred since prior to the time the money is restored, there are no restrictions on the embezzler's use of the funds. Cf. L. M. Muldrow, supra. The petitioners contend that in some manner their repayments *164 in 1966 and 1967 should serve as an "off-set" against the amounts embezzled during the years in issue. Although they admit that section 1341[6] *165 is not applicable and, in any event, would not give them this relief, they argue on reply brief, without citation, that "the same equitable principle as is embodied in section 1341 should apply and there should be no tax on funds which had been restored and which, therefore, did not constitute income." This proposition is clearly contrary to the principles enunciated in the cases discussed above. We have found no authority to support the view that a taxpayer's repayment of embezzled money in one year negates his tax liability for the prior years in which the embezzlement took place. Section 1341 does not so provide, and we are unable to broaden its scope to fit the petitioners' needs. White v. United States, 305 U.S. 281, 292 (1938). The respondent properly included the amounts misappropriated by Frank in the petitioners' gross income for the years before us. We must next consider whether any part of the deficiencies determined for each of the taxable years in issue is due to fraud so as to warrant the application of section 6653(b). That section provides: (b) Fraud - If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. On this question, the burden of proof is upon the respondent, sec. 7454(a), and he must establish by clear and convincing evidence that a part of the deficiency in each year is due to fraud with intent to evade tax. Gromacki v. Commissioner, 361 F. 2d 727 (C.A. 7, 1966), affirming a Memorandum Opinion of this Court; John Marinzulich, 31 T.C. 487 (1958); Luerana Pigman, 31 T.C. 356 (1958); E. S. Iley, 19 T.C. 631, (1952); Arlette Coat Co., 14 T.C. 751 (1950). The respondent must show that the taxpayer had a specific purpose to evade a tax which he believed to be owing. Carter v. Campbell, 264 F. 2d 930 (C.A. 5, 1959); Mitchell v. Commissioner, 118 F. 2d 308 (C.A. 5, 1941). The question of fraud is a factual one *166 to be resolved from a consideration of the entire record. William G. Stratton, 54 T.C. 255 (1970); Welburn Mayock, 32 T.C. 966, 974 (1959). In the present case, the respondent maintains that the evidence clearly supports the imposition of the addition for fraud. On brief, he notes that Frank was an intelligent man, holding a position of public trust; that Frank embezzled money from the City of Goldsboro; that Frank omitted the misappropriated funds, a substantial amount of his income, from his tax returns over a number of years; and that Frank knew this income was taxable when he was interviewed by an internal revenue agent in December 1965. The respondent asserts that these factors support a presumption that Frank was aware of his responsibility to report the embezzled funds and intended to defraud the Federal Government. The respondent believes that the imposition of the 50 percent fraud addition provided for by section 6653(b) is thereby justified. We do not agree. Even in situations where the evidence tends to create suspicion and doubt as to the intentions of a taxpayer, fraud is never to be presumed. L. Glenn Switzer, 20 T.C. 759, 765 (1953); John Marinzulich, supra at page 493, *167 Carter v. Campbell, supra at page 953; E. S. Iley, supra at page 635. Its existence must be affirmatively established. Drieborg v. Commissioner, 225 F. 2d 216, 218 (C.A. 6, 1955), affirming in part a Memorandum Opinion of this Court. In the instant case, the respondent has not shown that Frank entertained a specific intent to evade income taxes at the time he filed the returns for the years in issue. In the absence of such evidence, we are unable to sustain the imposition of the fraud penalty. 913 Harry Gleis, 24 T.C. 941, (1955), affd. 245 F. 2d 237 (C.A. 6, 1957); John B. Arnold, et al., 14 B.T.A. 954, 973-974 (1928). [7]
When Frank commenced his embezzlement scheme during the 1950's, there was no requirement for him to report any of the misappropriated amounts on his income tax return because embezzled funds had been held by the Supreme Court not to be taxable. Commissioner v. Wilcox, supra. Then, in 1961, the Supreme Court changed its view and held that such amounts were taxable in the year in which they were embezzled. James v. United States, supra.Of course, Frank is not to be excused from his legal responsibilities *168 merely because he may not have been aware of the change in the law. However, we think it is quite another matter to find that Frank, who continued to embezzle from his employer and omit this income from his returns as he had been doing all along, suddenly developed in 1961 an intent to evade tax. As we observed above, to make such a finding we would require affirmative evidence of a more substantial nature. We recognize that seldom in a case such as this is there direct proof of a taxpayer's intention, and we have drawn all reasonable inferences from the entire evidence of record. Nevertheless, we are unable to find that Frank had the requisite fraudulent intent. The fact that he had been defrauding his employer does not automatically lead to the conclusion that he intended to defraud the Federal Government. While in some instances it may be reasonable to conclude that an embezzler is a type of individual who would not hesitate to understate his income on his tax return, Rogers v. Commissioner, 111 F. 2d 987 (C.A. 6, 1940), we are unable to find in the record before us any clear and convincing evidence that Frank refrained from reporting income which we knew to be taxable.[8] *170 Frank's *169 understating of his income on his returns is not by itself evidence of fraudulent motivation. See William G. Stratton, supra; Tsuneo Otsuki, 53 T.C. 96 (1969); and James Nicholson, 32 B.T.A. 977, 989 (1935), affd. 90 F. 2d 978 (C.A. 8, 1937). Cf. Holland v. United States, 348 U.S. 121, 139 (1954). [9] The fact that Frank was aware of the taxability of the embezzled funds when he was interviewed by an internal revenue agent in December 1965, and was, initially, less than candid with the agent does not establish that he was aware of the taxability of this money when he prepared and filed his returns for earlier years. [10] *171 After an examination of the entire record in this case, we have concluded that the respondent has not satified his burden as to the fraud issue by the requisite clear and convincing evidence. The petition filed with the Court alleges that Mary knew nothing of Frank's embezzlement activities and received no benefit from the money he took from the City of Goldsboro. The petition suggests that, under these circumstances, Mary, individually, is not liable for the tax attributable to the embezzled funds. The petitioners have not provided the Court with any further discussion of this question on their briefs. The parties have stipulated that the returns filed for the years 1961 through 1964 are "joint" returns, and there is no suggestion even that Mary did not voluntarily sign the return in each year, or that her signature was occasioned by duress, mistake, trickery, or deception. It is clear that she intended to file a joint return with her husband, and the petitioners have presented no evidence to the contrary. We conclude that the petitioners' returns for the years 1961 through 1964 were 914 validly executed joint returns. Section 6013 (d)(3) provides that "if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." Accordingly, even though Mary *172 may not have known of or benefited from the embezzlement activity (a fact which we tend to doubt), we must neverthless reject the petitioners' contention that Mary is not liable for the deficiencies asserted by the respondent. Betty Bell Huelsman, 54 T.C…. (June 29, 1970.) [11] See also O'Dell v. United States, 326 F. 2d 451 (C.A. 10, 1964); Furnish v. Commissioner, 262 F. 2d 727 (C.A. 9, 1958); Irving S. Federbush, 34 T.C. 740 (1960), affd. per curiam 325 F. 2d 1 (C.A. 2, 1963); Meyer J. Safra, 30 T.C. 1026 (1958); W. L. Kann, 18 T.C. 1032 (1952), affd. 210 F. 2d 247 (C.A. 3, 1953), certiorari denied 347 U. S. 967 (1954); Myrna S. Howell, 10 T.C. 859 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949).
Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954. Sec. 1341↩ deals with "Computation of Tax Where Taxpayer Restores Substantial Amounts Held Under Claim of Right." 2. In their original brief, the petitioners make the alternative argument that section 1341 serves to negate the deficiencies determined for the years in issue as a result of their having repaid the embezzled amounts in 1966 and 1967. In their reply brief, however, the petitioners acknowledge that section 1341↩ would not apply to reduce their liability in the prior years.
3. Section 61(a)↩ provides that "* * * gross income means all income from whatever source derived * * *"
4. Neither petitioner appeared at trial, and we do not have the benefit of their testimony.↩
5. See also Arthur H. Bichnan, T.C. Memo. 1969-27↩, in which we stated that "a mere obligation, even though in written form, to repay wrongfully acquired money or property, which obligation arises from the wrongful appropriation, is not sufficient to render such funds nontaxable as borrowed money."
6. Section 1341 provides for a computation of tax in the current taxable year when a taxpayer is entitled to a deduction in that year with respect to an item included in his gross income in a prior year because it then appeared that he had an unrestricted right to such item.
7. See also Estate of Clair S. Kauffman T.C. Memo. 1969-20↩.
8. In Charles E. Capp, T.C. Memo. 1968-53, the Commissioner contended that the taxpayer's overall pattern of fraudulent activities in appropriating his employers' funds evidenced a scheme and a purpose to defraud the Government of taxes actually done. We held that, even though the taxpayer's activities did not preclude a finding of an intent to evade taxes, such activities by themselves - as distasteful and suspicious as they may have been - were not sufficient to establish clear and convincing evidence of the requisite fraudulent intent. We pointed out that, in order for the Commissioner to carry his burden, he has to show that the taxpayer's scheme is designed or carried out with the intent of evading taxes. We further pointed out that, while ignorance of the rule of James v. United States would not excuse the taxpayer in Capp, we would not presume or assume that the taxpayer intended to conceal from the Government embezzled funds which he knew to be taxable. Such an intent had to be clearly and convincingly proved by the evidence.
9. See also Vernon P. Bonner, T.C. Memo. 1966-96, and Estate of Clair S. Kauffman, supra.↩In Bonner, we stated that "[It] is not enough, however, to establish fraud merely by showing understatement of income without more in a case involving embezzlement income." 10. In Donald B. Semple, a Memorandum Opinion of this Court, dated August 28, 1951, we said that "[Subsequent] conduct of the taxpayer, after making the return, even though reprehensible, will not justify the imposition of the [fraud] penalty, unless the fraudulent intent is shown to have existed when the return was made."
11. A reviewed opinion of the Court, on remand from the Sixth Circuit. See Huelsman v. Commissioner 416 F. 2d 477 (C.A. 6, 1969), remanding T.C. Memo. 1968-95↩.