# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**


Argued April 4, 2011          Decided October 7, 2011
Amended December 9, 2011

No. 10-3039

UNITED STATES OF AMERICA,
APPELLEE

v.

ABDUL KARIM KHANU,
APPELLANT


Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00087)


*John W. Nields Jr.,* argued the cause for appellant. With him on the briefs were *William R. Martin* and *Kerry Brainard Verdi*.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman* and *Suzanne G. Curt*, Assistant U.S. Attorneys. *Roy W. McLeese III,* Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, GINSBURG and BROWN,

*Circuit Judges*.

Opinion for the Court *filed* PER CURIAM.

Opinion concurring in part and dissenting in part filed by *Chief Judge* SENTELLE.

PER CURIAM: Appellant Abdul Karim Khanu appeals his conviction and sentence on two counts of attempted tax evasion. He argues the Government failed to prove the element of tax loss because it relied upon a flawed calculation under the "cash method of proof" and attributed to Khanu $1.9 million of alleged gain when those funds, as a matter of law, belonged to his two corporations. Khanu challenges his sentence to the extent it rests upon the allegedly incorrect calculation of tax loss. We affirm the convictions and the sentence.

## Background

This appeal arises from an indictment returned in March of 2009, charging appellant Khanu with twenty-two counts generally related to his alleged evasion of personal income taxes and corporate taxes arising from his operation of two nightclubs in Washington, DC. According to the evidence adduced at trial, appellant owned or co-owned corporations which operated the two nightclubs from 1999 until 2003. In preparation for establishment of the first nightclub, appellant leased a property in northwest Washington from a landlord who required the submission of a personal balance sheet. The balance sheet, which became critical evidence for reasons which will be set forth more fully below, indicated that appellant personally had $700,000 in cash on hand and in bank accounts as of April 12, 1999. The operation of the nightclubs generated substantial amounts of cash from such items as cover charges at the door and sales from the bars.

Khanu was responsible for large cash deposits in the corporate bank accounts.

In October of 2003, Internal Revenue Service agents executed a search warrant on Khanu's home and seized approximately $1.9 million in cash from a safe in a dead-bolt-locked pantry. Khanu later swore an affidavit attesting that the $1.9 million "is the property" of the corporations, which, pursuant to a closing agreement with the IRS, then used the money to satisfy outstanding tax liabilities of their own.

In March of 2009, the grand jury returned the twenty-two count indictment charging: (1) conspiracy (18 U.S.C. § 371) (Count 1); (2) three counts of attempted tax evasion related to the filing of his individual income tax returns from 2001 through 2003 (26 U.S.C. § 7201) (Counts 2-4); (3) four counts of aiding and assisting in the preparation and filing of false tax returns related to the annual corporate tax returns for two corporations of which he was an owner for the fiscal years ending September 30, 2002 and 2003 (26 U.S.C. § 7206(2)) (Counts 5-8); and (4) fourteen counts of aiding and assisting in the preparation and filing of false tax returns related to the quarterly tax returns for those corporations during the same time period (26 U.S.C. § 7206(2)) (Counts 9-22).

Before trial, the defense moved to exclude evidence of the $1.9 million, arguing that Khanu had disclaimed any ownership of the funds in the affidavit, and that the funds could not be included in his net worth at the end of 2003 because the Government had seized them before the end of that tax year. The district court denied Khanu's motion because, notwithstanding the putative "repayment" of the $1.9 million to the corporations, a jury could find Khanu had exercised sufficient control over the money for it to be taxable as personal income to him.

After a three-week trial, the jury found Khanu guilty of two counts of attempted tax evasion related to the filing of his individual tax returns for 2002 and 2003 but acquitted him of all other charges. The district court sentenced Khanu to concurrent thirty-eight month terms of incarceration on the two counts of conviction followed by concurrent three-year terms of supervised release, and ordered restitution of $951,520.00. In an amended judgment, the court reduced the amount of restitution to $302,832.64.

## The Trial

As pertinent to this appeal, critical evidence offered by the government in the trial included an income and tax computation presented by an expert witness and evidence of the $1.9 million seized under the search warrant of October 2003. The government presented the computation evidence through IRS Agent Freddie Lewis. The theory of the government's case as to both years, outlined by Lewis, was based on the "cash method of proof." This method computes cash on hand held by the taxpayer, cash expenditures by the taxpayer, and compares that cash total against cash from all known sources for the years in question. The net excess of cash expenditures over the cash from all sources is treated as unreported income. As the government's expert testified at trial, the cash method of proof requires a starting point with respect to the cash on hand. Lewis began his analysis with a starting figure for cash on hand derived from the balance sheets Khanu submitted to his landlord preparatory to the lease of nightclub space in April of 1999. After making adjustments for Khanu's accounts at the time of the filing of the balance sheet, Lewis calculated that the appellant had cash on hand of $698,886.20 on the date of the balance sheet.

Using the cash method, the cash on hand remaining at the end of 1999 ($559,554.29) was carried forward to the

beginning of 2000, the remaining cash on hand at the end of 2000 ($371,652.77) was carried forward to 2001, and the remaining cash on hand at the end of 2001 ($65,507.67) was carried forward to 2002.

Lewis then continued his calculation by determining all identifiable sources and uses of cash by Khanu during the years under examination. These calculations, as presented in evidence before the jury, included the $1.9 million of cash seized from appellant's home in October 2003. In this final calculation, Lewis determined that in 2002 appellant had total cash expenditures of $609,498.90 against $156,403.85 in total sources of cash. By subtracting the cash from known sources from the total cash expenditures, Lewis concluded and the government contended that appellant had $453,095.05 in unreported income for the tax year 2002. For the tax year 2003, Lewis calculated that appellant's total cash expenditures exceeded his total sources of cash by $2,227,690.07. The government contended that Khanu had underreported his income by that amount in 2003. Particularly, the calculation for 2003 included the $1.9 million seized from Khanu's home. Therefore, exclusive of the $1.9 million, Khanu's unreported income, as evidenced by the cash method calculation, approximated $300,000 for that year.

## Analysis

Appellant argues that the judgment of the district court rests on reversible errors both as to the convictions and the sentences. Appellant offers two principal arguments going to the validity of the convictions, one as to the sentencing. One of the alleged substantive errors affects both counts of conviction, the other only tax year 2003. We begin with the error asserted as to both years.

## A.  The Method of Proof

To establish a violation of 26 U.S.C. § 7201, the prosecution must establish three elements beyond a reasonable doubt:  "(1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion."  *United States v. Smith*, 267 F.3d 1154, 1165 (D.C. Cir. 2001). Appellant asserts that the prosecution in the present case did not present sufficient evidence to establish the second element beyond a reasonable doubt.  Therefore, the defense argues, the district court erred in denying his motion for judgment of acquittal.  As noted above, the government's evidence on the element of tax deficiency rested on a "cash method" of proof. Under this indirect method of proof, the prosecution's evidence "focuses on the taxpayer's sources and uses of income," *United States v. Hogan*, 886 F.2d 1497, 1509 (7th Cir. 1989).  In using this method, the government is required to present evidence relating to the taxpayer's cash expenditures.  *See United States v. Toushin*, 899 F.2d 617, 619 (7th Cir. 1990).  As Agent Lewis presented in this case, taxable and nontaxable cash sources are added together, including any cash accumulated and on hand at the beginning of the tax period.  To the extent that cash expenditures exceed cash sources during the taxable period, as was evidenced in this case, the government's theory is that the excess may be inferred to be unreported income.  *See id.* at 620.  The government argues that the accounting evidence, supported by documentary and other evidence underlying the accounting, is sufficient to survive defense motions for judgment of acquittal, and support the jury's determination that the evidence established a tax deficiency beyond a reasonable doubt.

Appellant argues that the prosecution's evidence is not sufficient to establish a deficiency under the cash method.

This argument rests on the proposition that under this method, "the government must establish the defendant's cash on hand at the beginning of each of the disputed years with *reasonable certainty*, while negating all other sources of nontaxable income during the same period." *United States v. Conaway*, 11 F.3d 40, 44 (5th Cir. 1993) (emphasis added). Appellant argues that the government's figure of $698,886.20 was not established with reasonable certainty, nor all other sources of nontaxable income negated. Appellant contends that he might well have understated his cash on hand for business reasons at the time of the preparation of the balance sheet relied upon by the government's accountant. He further contends generally that there might have been other sources of nontaxable income that the government did not negate. We find neither of these arguments convincing.

While it is true that appellant might have understated his cash on hand in his business transactions, this goes to the weight of the evidence, not its legal sufficiency. Likewise, it is also true that despite the government's evidence that it could locate no sources of nontaxable income, there may have been some. The difficulty with appellant's arguments is not that they are without reason, but that they prove far too much. It is always the case that the government's accounting figures in a cash method tax computation might be refuted, either as to the beginning amount or to the possibility of nontaxable sources. If the government had to establish with absolute certainty a beginning number and an impervious bar to nontaxable sources, indirect methods of proof of income could never be used. No matter how the government proved the beginning number, the defendant could always argue after judgment that the government had not negated the possibility that he had some other money hidden somewhere or that some other source existed. It is not improperly shifting the burden of proof to the defendant to say that unrebutted evidence of

the government is sufficient to survive a motion under Rule 29 and to sustain a conviction. To adopt the appellant's argument would be to hold that indirect methods of proof can never be used to establish deficiencies in income tax prosecutions—a proposition long ago rejected. For example, in *United States v. Johnson*, 319 U.S. 503 (1943), the Supreme Court upheld the tax evasion convictions of a defendant engaged in an illicit gambling business, observing that "[i]t is not to be expected that the actual financial transactions of such a vast illicit business would appear by direct proof." *Id.* at 517. In *Johnson*, as in the case before us, the government proved the existence of a deficiency by an indirect method—in this case by the "cash method," in *Johnson* by the similar "cash expenditures method."

In short, we find no error in the district court's denial of the defendant's motions for judgment of acquittal.

## B.  The $1.9 Million

Khanu has, from the outset, argued the $1.9 million seized from his safe should have been "excluded" from the Government's evidence of tax loss. In his pretrial "Motion to Exclude the $1.9 Million," Khanu said the money was not income to him because it was the "property" of the corporations, for which he acted only as a custodian. Khanu renewed this argument after trial, pointing to evidence the nightclubs brought in nearly $1 million in cash from a party just two weeks before the raid. The district court rejected Khanu's argument because, it held, the money would still count as income to Khanu if he exercised sufficient control over it and intended to put it to his personal use; whether he did so was for the jury to determine.

On appeal, however, Khanu does not press the point about control and ownership of the funds while they were in

his custody; rather, he contends his "return" of the funds, regardless of his prior actions or intent, nullifies any liability on his part for the income tax on those funds. Citing cases about the tax consequences of embezzlement, he says he had no obligation to report the $1.9 million on his 2003 tax return because he "lost control of the funds" to the IRS or at least "disclaimed any ownership interest" in the money when he signed the affidavit. *See James v. United States*, 366 U.S. 213, 220 (1961) (dictum) ("if, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income'"); *Gilbert v. Comm'r*, 552 F.2d 478, 481 (2d Cir. 1977) ("if [an embezzler] repays the money during the same taxable year, he will not be taxed"); *Han v. Comm'r*, 83 T.C.M. 1824, 2002 WL 1298745, at *23 (2002) ("Funds over which a taxpayer has obtained dominion and control, lawfully or unlawfully, are not taxable to him to the extent they are repaid before year end"); *Mais v. Comm'r*, 51 T.C. 494 (1968) (funds seized from embezzler by police not taxable to him in the year repaid).

If we are to consider this late-raised but intriguing argument, then we must first determine the appropriate standard of review, which in turn depends upon the nature of the error Khanu has assigned. In his opening brief Khanu argued "it was error to permit the government to include the $1.9 million in its [c]hart," which went to the jury. Br. of Appellant at 40. To this the Government understandably responded that the district court "properly admitted" evidence of the $1.9 million. Br. of Appellee at 17. Although the dispute thus seemed to have been neatly framed in terms of admissibility, Khanu in his reply brief (at page 5) then informed us that, contrary to the Government's understanding (and ours), "[his opening] brief on appeal makes no argument about admissibility of evidence in connection the $1.9 million at all."

Khanu's emphatic reply does not clarify matters; quite the opposite. Accusing the Government of "mischaracterizing" his argument does not thereby entitle Khanu to review of the claim on his terms, to wit, as a bare question of law we may resolve without considering how, when, or whether he presented the claim to the district court. If there is a distinction between Khanu's argument against "permitting the inclusion" of evidence and a conventional argument against "admission" of the same, then it eludes us. According to Khanu, however, the difference lies in the standard of review: Whereas questions of admissibility are reviewed only for abuse of discretion, *see United States v. Warren*, 42 F.3d 647, 655 (D.C. Cir. 1994), his claim, which raises the purportedly different, legal question of "includability," should be reviewed de novo.

Khanu is confused as well as confusing. In order to pursue an objection based upon "erroneous evidence," Br. of Appellant at 39, he must identify an erroneous evidentiary ruling, whether the underlying error is one of law, fact, or judgment. Khanu, however, waived any objection to the admission of evidence, as we explained above, and has identified no other evidentiary ruling as the subject of his argument.[*]

---

[*] Khanu first cited the dictum in *James v. United States*, 336 U.S. 213 (1961), and the decisions of the tax court described in the dissenting opinion, at the sentencing phase of this case. We think Khanu's objection under *James* rests upon a theory of embezzlement that he did not present in his pretrial motion, in which he argued he was merely the custodian of the $1.9 million, and that he effectively repudiated when he moved for a judgment of acquittal; in that motion he maintained he had "freely and transparently" borrowed cash from the corporations and "there was not one shred of evidence" of skimming. Therefore, were we to review the district court's ruling on a "pure question of law" arising under *James*, we would do so only for plain error, and under that standard we would hold the district court did not commit reversible error.

Assuming Khanu's argument is aimed at something, we think it is the sufficiency of the evidence that he willfully attempted to evade taxes; to wit, he says, "there is no criminal tax evasion with respect to the $1.9 million," because under the dictum in *James* "there was no *tax due and owing* on those funds." Br. of Appellant at 35. When we address the sufficiency of the evidence underlying a conviction, we view the evidence in the light most favorable to the Government and ask whether "*any* rational trier of fact" could, based upon the evidence at trial, find the element of tax loss beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Khanu concedes the Government's chart, which he identified as the target, if not the underlying subject, of this argument, showed unreported income of $300,000 in addition to the $1.9 million in dispute. One would think that an end to the matter. Khanu nevertheless contends the verdict cannot be assumed to rest upon the tax owing on the $300,000 because the inclusion of the $1.9 million on the chart "severely prejudiced" the jury's deliberations. The objective standard prescribed in *Jackson*, however, requires us to consider whether "*any* rational trier of fact" could convict Khanu, not whether the jury that actually convicted him might have voted differently under other circumstances. Because a rational trier of fact could find beyond a reasonable doubt a tax was due and owing on $300,000 of income, we leave for another day how best to interpret the dictum in *James*.

## The Sentencing

Appellant also contends, unsurprisingly, that the district court erred in considering the tax due on the $1.9 million in determining his sentence. We affirm the sentence because the district court made sufficient factual findings at sentencing to support the inclusion of the $1.9 million in the calculation of

tax loss notwithstanding Khanu's "repayment" of those funds to his corporations. *See* U.S.S.G. § 2T1.1(c) (1), (5) ("the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)" and is "not reduced by any payment of the tax subsequent to the commission of the offense"); *see also* § 1B1.3(a) & cmt., n.1 (relevant offense conduct for purposes of sentencing is not limited to acts for which defendant is criminally liable and includes "all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense").

\* \* \*

In sum, the judgment of the district court is in all respects

*Affirmed.*

No. 10-3039 – *United States v. Khanu*

SENTELLE, *Chief Judge*, concurring in part and dissenting in part: While I am pleased to join in my colleagues' affirmance of the judgment of conviction on Count 3, I find myself unable to join the opinion or the result as to Count 4.

I accept the majority's statement of the underlying facts respecting the $1.9 million. Briefly, government agents discovered the $1.9 million in cash in Khanu's possession during the relevant tax year. Khanu identified the money as that of his corporation, disavowed ownership, paid the money over to the IRS in settlement of corporate tax obligations, and did not possess it at the end of the tax year. Unlike the majority, I cannot, however, conclude that those facts support the inclusion of the $1.9 million in the computation of the deficiency element of tax evasion. Unlike the majority, I find appellant's argument on this point neither confusing nor confused, nor do I find the distinction between "'permitting the inclusion' of evidence and a conventional argument against 'admission' of the same," elusive. Maj. Op. at 10.

To me, the distinction is plain. Appellant does not contend that the evidence was not admissible for some purpose, only that the $1.9 million amount could not be included in the expert witness's computation upon which the deficiency element of tax evasion was based. It would seem reasonable, indeed commonplace, to assume that use of a cash method or other circumstantial evidence method of establishing deficiency would always involve accounting which would include cash flow and cash amounts that would pass through the expert witness's computations but not be included in the final deficiency at the conclusion of those computations. Any nontaxable source of cash to the taxpayer would certainly enter the expert witness's computation, but such amount would not be included at the end. For example, it would not be error for the court to admit

evidence of a taxpayer's bank account swelling by $100,000 due to a nontaxable gift, and yet it would be error for the same court to permit the expert witness to testify to the jury that that $100,000 was included in the shortage upon which the expert witness bases his conclusion of reported income deficiency. Just so here.

Unlike the majority, I share appellant's understanding of the appropriate standard of review. Certainly, admissibility of evidence is generally reviewed for abuse of discretion, *see United States v. Warren*, 42 F.3d 647, 655 (D.C. Cir. 1994). However, the tax consequences of a particular transaction would seem to be a rather pure question of law which we would review *de novo* for legal error.

Finally, I do not accept the majority's description of this argument as "late raised." Khanu filed his "motion to exclude $1.9 million from government's calculations . . ." on August 3, 2009. The district court entered its denial of that motion on October 14, 2009. Both of these occurred before the commencement of the trial. In this court, the first point argued by appellant in his opening brief is that "the $1.9 million was, as a matter of law, not taxable income to Mr. Khanu." I see no sense in which the argument is late raised. Therefore, concluding that the standard of review is for legal error, the remaining question is whether it was in fact error. It was.[1]

---

[1] The majority's footnote at page 10 does nothing to change this fact. The most the majority can assert is not that Khanu did not raise the objection in the district court, but that he did not cite the appropriate case. I know of no precedent or other rule of law requiring a litigant to cite a particular case in order to preserve an error.

In the court below, and before us, appellant has consistently contended that the $1.9 million could not be included in the computation of his cash expenditures, as it was held by him only in safekeeping for the corporations. The government argued at trial, and argues on appeal, that it was a factual issue for the jury to resolve as to whether he was in fact holding the cash for the corporations, or had taken it for his personal use. If the $1.9 million was properly included in the accountant's computation, the government contends, then it was for the jury to decide whether it was cash he held and expended upon its seizure, or cash he held for the corporation which was not includable. The difficulty with the government's case is that it should not have been included in his unreported income under either circumstance.

Appellant argues, and I agree, that under the principle of taxation announced by the Supreme Court in *James v. United States*, 366 U.S. 213 (1961), even if Khanu took the money from the corporations for his personal use—whether that is called embezzling or skimming—it could not under the facts of this case be included in his taxable income. In *James*, the Court accepted with approval the government's proposition that "'if, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income.'" *Id.* at 220 (quoting the brief of the United States). While the opinion in *James* is a plurality opinion, neither of the separate opinions questioned the judgment of the plurality on this point. While neither the Supreme Court nor this court has clearly spoken to the question since *James*, other lower courts have reiterated the Supreme Court's point. In *Gilbert v. Commissioner of Internal Revenue*, 552 F.2d 478 (2d Cir. 1977), the Second Circuit held that "if [an embezzler] repays the money during the same taxable year, he will not be taxed." *Id.* at 481 (citing *James*). Likewise, the Tax Court has followed *James*. In *Han v. Commissioner*, 83 T.C.M.

4

1824 (2002), that court declared, "[f]unds over which a taxpayer has obtained dominion and control, *lawfully or unlawfully*, are not taxable to him to the extent they are repaid before year end." *Id.* at 23 (emphasis added).

Very directly on point to the issue before us, in *Mais v. Commissioner*, 51 T.C. 494 (1968), the Tax Court held that embezzled money turned over "to the New York Police Department for restitution to" the victim would not be "treat[ed] as income" to the embezzler in the year of the embezzlement. *Id.* at 497. Language of *Mais* applies perfectly to the case before us. The United States on appeal is unable to dispute the correctness of defendant's interpretation that money gained by embezzlement but repaid during the tax year does not generate tax liability for the embezzler. Citing *Mais*, the government argues that Khanu should have reported the $1.9 million then deducted it. I am at a loss as to how this would fill in the necessary element of deficiency. The zero income shown by not reporting the $1.9 million is precisely the same as the zero that would be shown by reporting then deducting it. In any event, nothing in *James* compels the "report then deduct" procedure the government would impose, nor do I see any way in which willful criminal conduct could be found on the part of the defendant for not complying with such an apparently frivolous accounting procedure.

Finally, the government contends, and the majority argues, that if the inclusion of the $1.9 million in the tax accounting was error, it was harmless. Its argument is that because there was other accounting evidence of over $300,000 of unreported income in 2003, on which an additional $75,000 was due in owing, the inclusion of the $1.9 million did not prejudice the defendant. This argument fails for two reasons. First, the potential prejudice from a properly evidenced $300,000 understatement enhanced by a $1.9 million improper inclusion

would seem evident. The government went to the trouble of including the $1.9 million in its accounting, defended it against motions to exclude at trial, and argued the $2.2 million figure to the jury. I do not believe we can hold with confidence that this change in the magnitude of evidence by the improper inclusion did not prejudice the minds of the jury. Perhaps equally importantly, if not more so, we cannot know that the jury did not entirely base its guilt verdict on the $1.9 million while disbelieving or being unconvinced as to the smaller figure in the accounting. Nonetheless, the government is correct that the $300,000 was properly in evidence. Therefore, we should not reverse the district court's denial of defendant's motion for judgment of acquittal, but rather should vacate the judgment and remand this count for retrial.

I note again that I would not hold, nor did appellant contend, that the seizure of the $1.9 million could not come into evidence—only that it could not be included as part of the unreported income. It may be that the evidence would go to the intent of the defendant or to his method of operation. It is likely that the $1.9 million could, indeed perhaps should, be part of the accountant's computation as a source of cash, then offset by an expenditure at the time of the seizure and the return to the corporation.

For the reasons set forth above, I dissent from the court's affirmance of the conviction and sentence on Count 4.