BRENDA BLINDERMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; STEVEN MARC BLINDERMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blinderman v. Commissioner
Docket Nos. 19949-81, 33940-84, 33992-84.
United States Tax Court
T.C. Memo 1986-536; 1986 Tax Ct. Memo LEXIS 71; 52 T.C.M. (CCH) 972; T.C.M. (RIA) 86536; November 5, 1986; As Amended December 10, 1986 *71 Ps embezzled funds from the wholesale drug company where P husband was employed by submitting invoices for inventory that was never received. P wife deposited checks issued by the drug company in payment for the fictitious invoices into the account of a corporation formed by Ps and used the funds to pay for personal expenses. The Commissioner determined deficiencies in tax and additions to tax for omission of income attributable to the embezzled funds. Held, (1) the issues decided in Ps' divorce proceeding have no preclusive effect in this case; (2) the embezzled funds were income to Ps upon receipt; (3) P wife does not qualify for innocent spouse status under section 6013(e), I.R.C. 1954; (4) petitioners are liable for additions to tax under section 6653(b), I.R.C. 1954; and (5) no statute of limitations applies in this case. Arthur Pelikow, for the petitioner in docket Nos. 19949-81 and 33992-84. Richard T. Sinrod, for the petitioner in docket No. 33940-84. David Goldberg,Jody Tancer, and Frank Laurino, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in income tax and additions to tax against the following petitioners *72 for the following years: [1] *73 Addition to Tax
Petitioner
Docket No.
Year
Deficiency
Sec. 6653(b) [2]
Brenda Blinderman
33992-84
1974
$5,278.50
19949-81
1975
7,499.00
3,749.50 19949-81
1976
20,205.00
10,102.50
Steven Blinderman
33940-84
1974
5,278.50 33940-84
1975
3,749.50 33940-84
1976
13,253.00
10,102.50 The issues for decision are: (1) whether the doctrine of res judicata or collateral estoppel applies in these cases; (2) whether respondent correctly calculated the deficiency in tax for the 1976 year; (3) whether Brenda Blinderman is liable for deficiency in tax for the 1974, 1975 and 1976 years; (4) whether Steven Blinderman *74 and/or Brenda Blinderman are liable for additions to tax under section 6653(b); and (5) whether the statute of limitations bars the assessment and collection of deficiencies in income tax and the additions to tax in these cases. FINDINGS OF FACT These cases were consolidated for trial, briefing and opinion. Some of the facts have been stipulated. The stipulations and exhibits attached thereto, except as noted, are incorporated herein by reference. Petitioner Brenda Blinderman (hereinafter Brenda or petitioner) does not stipulate to the following paragraphs and they are not incorporated: 1, 6, 10, 18, 21, 23, 25, 26, 33, 36 and 37. Petitioners resided in the State of New York at the time the petitions in these cases were filed. Steven Blinderman (hereinafter Steven or petitioner) and Brenda were married on July 22, 1967, and were divorced in January, 1979. During the years 1974, 1975 and 1976, Brenda and Steven were married, living together in Woodmere, New York, and filed joint income tax returns. Brenda is a college graduate who received a BA degree in education. She taught kindergarten and first grade until her first child was born in 1969. During the years in issue, she was *75 not employed outside her home. During the years 1973 through 1977, Steven was employed by Blinn Wholesale Drug Company (Blinn) in a managerial capacity as Blinn's drug purchasing agent. Blinn is owned by William Blinderman (Steven's father) and Bernard Blinderman (Steven's uncle and brother of William Blinderman). Lodox Wholesale Drug (Lodox) was a wholly-owned subsidiary of Blinn during the years in issue. Steven had worked for Blinn since he was 13 years old. Prior to the years in issue, Steven had complained to Brenda about his dissatisfaction with the amount of salary he was earning at Blinn. In 1971 Steven and Brenda received money from their parents to purchase a house because they lacked sufficient funds, and, on numerous occasions before the years in issue, they would have to ask Steven's parents for money in order to meet monthly expenses. Steven and Brenda formed Linetta Distributors, Inc. (Linetta) in July, 1973. In August, 1973, a bank account was opened for Linetta at Chemical Bank over which Steven, as president, and Brenda, as secretary, of Linetta had signatory authority in their individual capacities. Brenda used her maiden name, Brenda Hoffman, when she signed *76 the bank signatory card for Linetta. During 1973 through 1977, fictitious Linetta Invoices were submitted to Blinn and Lodox for which Blinn made payment by issuing a check payable to Linetta. Brenda picked up the checks from the post office box she had established for Linetta and deposited them in the Linetta bank account. Brenda controlled the administration of the Linetta account as well as the Blinderman's personal checking account. She not only made all the deposits into the Linetta account, but also wrote most of the checks drawn from that account. The funds in the Linetta account were used to purchase, inter alia, a Pearson 10 meter yacht, an Advent video beam projection television, a video taping machine, a Porsche automobile, season tickets for New York Islander hockey games, a Leica 35 mm camera and lens and a fox fur coat (for Brenda). Brenda deposited other funds from the Linetta account into petitioners' personal checking account to pay for their personal expenses. Brenda and Steven both used the Islander hockey tickets, the Pearson 10 meter yacht, the Porsche automobile, the Advent video beam projection television and the video tape machine. As part of their divorce *77 proceedings, certain assets purchased with Linetta funds were divided between Steven and Brenda. Brenda received the fur coat, the Advent video television and the video recorder. After the divorce, some of the assets were sold and the proceeds were used to support Steven and Brenda and their children. During the years in issue, Steven's father suspected that Brenda and Steven were living beyond their means and began questioning them about their acquisition of certain assets that he considered beyond their means. They prevaricated, telling him that the yacht did not belong to them but that they rented its use on a part-time basis and that the Porsche had been in an accident and was purchased very cheaply and restored. In 1977 Steven revealed the Linetta embezzlement scheme to his father. As restitution, Steven gave up money from his bonus account at Blinn along with several shares of Blinn stock. In September of 1977, Steven consulted his attorney about his separation from Brenda and their impending divorce and told him about the Linetta operation. Linetta had not filed any tax returns for any years, nor had Steven and Brenda included any income derived from Linetta on their original *78 joint returns. At his attorney's advice, Steven filed amended returns for his 1973, 1974, 1975 and 1976 tax years in which he disclosed the following amounts of income derived from Linetta that had not been reported on his income tax returns: 1973 - $3,025; 1974 - $38,001; 1975 - $21,995; 1976 - $19,085. Brenda refused to sign the amended returns. Respondent agrees that Steven's amended returns for the years 1973, 1974 and 1975 are correct, but asserts that there was an omission of income in the amount of $35,744 from the Blinderman's joint return for the 1976 year. ULTIMATE FINDINGS OF FACT Linetta was a sham corporation formed for the purpose of embezzling funds from Blinn for petitioners' use. Both Steven and Brenda participated in the formation and operation of Linetta and enjoyed the benefits of increased income derived from the Linetta embezzlement scheme. OPINION 1. The Res Judicata/Collateral Estoppel Issue In 1978, Brenda commenced an action for divorce against Steven in the Supreme Court of New York, Nassau County. The Supreme Court of New York found in favor of Brenda on the grounds of (1) cruel and inhuman treatment and (2) adultery, and dismissed Steven's counterclaim *79 seeking to impose liability on Brenda for potential Federal income tax liability resulting from the Linetta operation. In its opinion the Supreme Court of New York found that Steven had failed to show by a preponderance of the evidence that Brenda was a moving force in the Linetta operation, failed to show that she received part of the money for her own exclusive use and benefit and failed to produce any evidence that she ever agreed to file amended returns. Brenda seeks to use the judgment of the Supreme Court of New York to estop respondent from litigating in this Court issues concerning her participation in the Linetta operation and liability for the deficiencies in tax and additions to tax in this case. The judgment of the Supreme Court of New York does not preclude respondent from determining who is liable for petitioners' taxes. Brenda has omitted from her brief the portion of the opinion in which the Supreme Court found that "[t]he consequences that may flow [from the Linetta operation] are [Steven Blinderman's] alone unless the Internal Revenue, of its own accord, seeks to fasten liability on the plaintiff wife." Nor is respondent precluded by either the doctrine of res judicata *80 or collateral estoppel from litigation the issues involved in this proceeding. Under res judicata, a final judgment on the merits bars further claims by parties or their privates based on the same cause of action. Montana v. United States,440 U.S. 147, 153 (1979). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. 440 U.S. at 153. Respondent was neither a party nor a privy to either of the parties in the action before the Supreme Court of New York. The general rule of preclusion provides that parties to a prior action are bound and non-parties are not bound under res judicata and collateral estoppel. See 18 Wright, Miller & Cooper, Federal Practice and Procedure, sec. 4449 (1981). Traditionally, the scope of the doctrine of collateral estoppel was limited by the doctrine of mutuality of the parties under which neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment. Parklane Hosiery Co. v. Shore,439 U.S. 322, 326-327 (1979). *81 The Supreme Court has broadened the scope of the doctrine of collateral estoppel beyond its common law limits by abandoning the requirement of mutuality of the parties when collateral estoppel is used "defensively," Blonder-Tongue v. University Foundation,402 U.S. 313 (1971), and by conditionally approving the "offensive" use of collateral estoppel by a non-party to a prior lawsuit. Parklane Hosiery Co. v. Shore,439 U.S. 322 (1979). [3]
Whether the doctrine of collateral estoppel is used defensively or offensively, the party against whom an estoppel is asserted must have had a full and fair opportunity to litigate the issue decided in a prior lawsuit. Blonder-Tongue v. University Foundation,402 U.S. at 328-329. *82 [4] In this case respondent has had no opportunity to litigate the issue of Brenda's liability for income tax attributable to the Linetta operation. Accordingly, respondent is not precluded from litigating that issue in this case. II. The Deficiency in Tax The funds embezzled from Blinn through the Linetta operation were income to Steven and Brenda Blinderman for the years in issue under section 61(a). Linetta was a sham corporation operating merely as the alter ego of Steven and Brenda Blinderman. A corporation will be recognized as *83 a separate entity if either (1) the purpose for its formation is the equivalent of a business activity or (2) the incorporation is followed by the carrying on of a business. Moline Properties v. Commissioner,319 U.S. 436, 438-439 (1943); Achiro v. Commissioner,77 T.C. 881, 901 (1981). In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal. Moline Properties v. Commissioner,319 U.S. at 439. Linetta was not formed for any legitimate business purpose, nor did it ever engage in any business activity. The only purpose for the formation of Linetta was to facilitate petitioners' embezzlement of funds from Blinn. The only activity Linetta performed was to submit false invoices to Blinn and Lodox. Linetta had no board of directors; its officers never held any formal meetings; nor did Linetta ever file any corporate tax returns. The funds deposited in the Linetta account were used to pay for petitioners' personal expenses. Accordingly, the funds deposited in the Linetta account are income to petitioners. [5] *84 Steven agrees that he is liable for deficiencies in tax during the years in issue. In 1977 he submitted amended returns which included as income funds embezzled through the Linetta operation. Steven and respondent agree as to the amount of income omitted from petitioners' joint tax returns except for the 1976 year. In order to verify the amounts claimed by Steven as omitted income on his joint 1975 and 1976 tax returns, respondent added the deposits into the Linetta bank account for these respective years. Blinn checks issued in payment for fictitious Linetta invoices provided the only source of deposits into the Linetta account. Thus, Linetta was a mere alter ego for petitioners. SeeMoline Properties v. Commissioner,supra.Any funds paid to the order of Linetta belonged in fact to petitioners upon receipt. Petitioners were able to use the funds received from Blinn upon receipt of Blinn's checks because both Steven and Brenda had signatory authority over Linetta's bank account in their individual capacities. *85 Petitioners' joint tax returns indicate the cash method of accounting. The embezzled amounts were properly includable in income on their joint tax returns for the years in issue upon receipt. James v. United States,366 U.S. 213 (1961); Mais v. Commissioner,51 T.C. 494 (1968).See also Hauser v. Commissioner,T.C. Memo. 1970-207. Steven's accountant determined Steven's tax liability by adding the withdrawals from the Linetta account during the years in issue. This method was incorrect. Steven contends that respondent has taken an inconsistent position in determining the deficiency in tax for the 1974, 1975 and 1976 tax years because respondent accepted Steven's computations with respect to the 1974 and 1975 years but not with respect to the 1976 year. A closer look at the Linetta account reveals that the amounts deposited during 1974 and 1975 were close to the amounts withdrawn during those years respectively. On his amended return for the 1974 year, Steven disclosed $38,001 of unreported income. The bank statements of Linetta for the 1974 year were not available, but based upon the records in evidence, respondent calculated $38,874.81 in deposits into the Linetta account as follows: *86 1973 Beginning Balance for Linetta
$ 20.00
1973 Total Receipts
3,661.81
1973 Total Check Disbursements
3,025.40
Beginning Balance - January 1, 1974
656.41
1974 Total Check Disbursements
38,310.65
1974 Ending Balance - December 31, 1974
1,220.57
1974 Total Receipts
$38,874.81
Respondent maintains that he chose not to raise additional unreported income in the amount of $873.31 for the 1974 year due to the relative small differential between the amount Steven reported on his amended 1974 return and the amount the Linetta documents reflect. It is noted that Steven has paid the deficiencies for the 1974 year relating to the omission of $38,001 in income. We accept respondent's position for the 1974 year. For the 1975 year, the bank statements of Linetta indicate receipts of $21.276.03 and check disbursements of $21,949.53. Based upon the withdrawal method of accounting, Steven disclosed in his amended return $21,995 in unreported income for 1975, and respondent accepted Steven's calculation. We do not accept respondent's position for the 1975 year. Because we hold that the correct method of accounting for the unreported income is the receipt method, petitioners are liable for taxes on $21,276.03 *87 of unreported income the 1975 year. For the 1976 year, the bank statements of Linetta indicate receipts of $49,243.81 from Blinn of which $13,500 represents a redeposited check. Therefore, $35,743.81 was the amount of unreported income the 1976 year. Accordingly, petitioners are liable for the deficiencies in income tax for the 1976 year relating to the omissions of $35,743.81. Petitioners argue that Steven's restitution to Blinn in the tax year 1977 should decrease his tax liability for the amounts embezzled in the year 1976. The only relief available to an embezzler, however, is to deduct from income of any year any amount repaid in such year in restitution. Mais v. Commissioner,51 T.C. at 499. Accordingly, Steven's repayment to Blinn in 1977 does not affect petitioners' tax liability in 1974, 1975 and 1976. III. Brenda's Liability for the Deficiency in Tax Brenda and Steven filed joint tax returns for the years in issue. In general, spouses who file a joint return have joint and several liability for the tax computed on their aggregate income. Section 6013(d)(3). Brenda argues that she should be relieved of joint and several liability for the deficiencies in tax because *88 her signature on the joint returns for the years in issue was obtaining through fraud and duress. Where a spouse disavows the signing of a joint return, the spouse must show both that (1) he or she was unable to resist demands to sign the return and (2) he or she would not have signed the return except for the constraint applied to his or her will. Stanley v. Commissioner,81 T.C. 634, 638 (1983); Brown v. Commissioner,51 T.C. 116, 118 (1968). The Court must determine "whether the pressure applied did in fact so far affect the individual concerned as to deprive [her] of contractual volition." Furnish v. Commissioner,262 F.2d 727, 733 (9th Cir. 1958), affg. in part and remanding in part 29 T.C. 279 (1957).Cases on this issue are decided upon the peculiar factual situations involved. Stanley v. Commissioner,81 T.C. at 638. In this case Brenda has failed to establish sufficient duress to relieve her of liability under section 6013(d)(3).She testified that Steven was "dominant" and "intimidating." On several occasions Steven deprecated her in the presence of others. None of the incidents which caused Brenda to fear Steven constitute the kind of duress that would deprive her or contractual *89 volition. Brenda's reliance on Stanley,Brown and Furnish is misplaced. In Stanley, this Court found that Stanley surrendered her W-2 forms to her husband under duress and that the documents filed by her husband for the years in issue did not constitute joint returns. The incidents that constituted duress in that case involved threats of bodily harm and separation from her children. No such threats occurred in this case. In Brown, this Court found that Lola Brown was forced to sign income tax returns by a domineering husband who gained her submission by threats and physical abuse. The husband was a large man who had a violent temper and often struck and bruised his wife. Brenda has failed to establish a long and continued course of mental intimidation such as that found in Brown.
In Furnish, the court said that: "Duress" may exist not only when a gun is held to one's head while a signature is being subscribed to a document. A long continued course of mental intimidation can be equally as effective, and perhaps more so, in constituting duress. * * * [Footnote omitted. Furnish v. Commissioner,262 F.2d at 733.] The Ninth Circuit in Furnish remanded the case to the Tax Court for *90 a redetermination of the duress issue. The standard to be applied in determining whether duress existed was "whether the pressure applied did in fact so far affect the individual concerned as to deprive [her] of contractual volition." Furnish v. Commissioner,262 F.2d at 733. We find that the pressure allegedly applied to Brenda did not in fact so far affect her as to deprive her of contractual volition. Brenda has also failed to provide any evidence to support her allegations of fraud on Steven's part. She looked at the original tax returns when she signed them, and she refused to sign the amended returns Steven gave her. Accordingly, Brenda has not established sufficient duress or fraud to relieve her of joint and several liability in this case. Brenda also seeks relief from joint and several liability claiming that she is an "innocent spouse" under section 6013(e). [6] *92 To qualify a petitioner for such relief, the evidence must show for each year that (1) on such year's return there is a substantial understatement [7] of tax attributable to grossly erroneous items [8] of petitioner's spouse; (2) petitioner did not know and had no reason to know of the substantial statement; and (3) *91 taking into account all of the facts and circumstances it is inequitable to hold petitioner liable for the deficiency attributed to such understatement. Brenda has not established that in signing her original tax returns she did not know, and had no reason to know, that there were substantial understatements of tax attributable to the omission of income derived from the Linetta operation. As an officer of Linetta, Brenda had signatory authority and control over the Linetta bank account. Brenda alone deposited all the Blinn checks into the Linetta account. She drew most of the checks from the Linetta account either to pay for personal assets or to deposit into petitioners' joint checking account to pay for personal household expenses. Brenda also exercised control over the joint checking account. Brenda knew that petitioners' life-style had improved considerably and that the source of the improvement was Linetta. Before Linetta was formed, petitioners sought financial assistance from their parents to buy a home *93 and to meet monthly expenses. During the years in issue, petitioners used Linetta funds to make extravagant purchases and to meet personal household expenses. Brenda looked at the original joint returns for the years in issue when she signed them. She knew how much Steven was earning from Blinn and that petitioners were spending much more than Steven's salary would permit. To qualify for innocent spouse status, "a spouse cannot close her eyes to unusual or lavish expenditures, or to other facts, that might give her reason to know of the unreported income." Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). In this case the lavish expenditures and the improvements in petitioners' life-style gave Brenda reason to know of the unreported income. Brenda testified that she believed that Linetta performed legitimate business transactions and had no reason to know that the invoices submitted to Blinn and Lodox were fraudulent. We find her testimony incredible. Brenda was involved with the formation of Linetta and was its secretary. She established the post office box for Linetta to which Blinn checks were sent. She made all of the deposits to and exercised control over the Linetta *94 account. She knew that all of the funds in the Linetta account were used to pay petitioners' personal expenses rather than to pay for business expenses. Brenda neither wrote nor did she ever see any check written from the Linetta account to a supplier. Nor did she ever see any invoices for any merchandise that Linetta might have to pay for. We must conclude that Brenda knew that Linetta never conducted any legitimate business. Brenda has also failed to show that it would be inequitable to hold her liable for the taxes attributable to the unreported income for the years in issue. In analyzing the inequitability of denying relief under section 6013(e), this Court has taken into consideration direct and indirect benefits received from the unreported income by the taxpayer claiming innocent spouse status. See, e.g., Adams v. Commissioner,60 T.C. 300 (1973). Although section 6013(e) as amended in 1984 no longer requires an assessment of whether a spouse benefitted from an erroneous item, Congress intended that benefits received should continue to be taken into account. H. Rept. 98-432, Pt. 2, 1502, (March 5, 1984). During the years in issue, Brenda enjoyed an improved life-style *95 as a result of the increase in income derived from the Linetta operation. Brenda participated in the use of the Pearson yacht, the Advent projection television, the Islander hockey tickets and the Porsche. Her fox fur coat was purchased for $1,100 of Linetta funds. She also used Linetta funds to pay for household expenses that had been difficult to meet in preceding years. Accordingly, we deny Brenda's claim to innocent spouse status under section 6013(e). IV. The Section 6653(b) Addition to Tax Petitioners maintain that respondent has failed to sustain his burden of proving fraud in order to establish their liability for additions to tax under section 6653(b). The burden of proving fraud is upon respondent to establish by clear and convincing evidence that at least a part of an underpayment of tax for the years in issue was due to petitioners' fraud with intent to evade tax. Rule 142(b); section 7454(a); Doncaster v. Commissioner,77 T.C. 334 (1981); Marcus v. Commissioner,70 T.C. 562 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). To prove fraud, respondent must show that petitioners acted with specific intent to evade a tax believed to be owing. Marcus v. Commissioner,70 T.C. at 577. *96 Because direct proof of an intent to defraud is seldom possible, respondent may show fraud through the transactions of the taxpayers. Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978). The existence of fraud is a question of fact to be determined upon consideration of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970), modified on other grounds 54 T.C. 1351 (1970).Upon consideration of the entire record, we conclude that respondent has sustained his burden of proof by clear and convincing evidence for each of the years in issue. Although mere understatement of income standing alone is not sufficient to prove fraud, the consistent and substantial understatement of income is, by itself, strong evidence of fraud. Marcus v. Commissioner,70 T.C. at 577; Harper v. Commissioner,54 T.C. 1121 (1970). Petitioners omitted income derived from the Linetta operation in the amounts of $38,001.00, $21,276.03 and $35,743.81 from their 1974, 1975 and 1976 original joint income tax returns, respectively. A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. See Holland v. United States,348 U.S. 121, 137 (1954); *97 Otsuki v. Commissioner,53 T.C. 96 (1969); Probber v. Commissioner,T.C. Memo. 1985-193. In this case petitioners participated in an embezzlement scheme to derive substantial funds from Blinn by the submission of fictitious Linetta invoices. Petitioners concealed the Linetta operation from William and Bernard Blinderman, Steven's father and uncle, who owned Blinn. Petitioners' misappropriation of funds through deceit and concealment is circumstantial evidence that they concealed from the Internal Revenue Service their receipts of embezzled funds from Blinn with the intent to evade tax. McGee v. Commissioner,61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976). Steven contends that his filing of an amended return in 1978 and partial payment of the deficiencies in tax rebut the presumption that he intended to evade income tax. Filing of the amended return in no way mitigates the fraud perpetrated in the filing of the original return. Naples v. Commissioner,32 T.C. 1090, 1097 (1959); Hirschman v. Commissioner,12 T.C. 1223 (1949). Brenda maintains that Steven's restitution to Blinn is evidence of "consensual recognition of an obligation *98 to repay" relieving petitioners of any obligation to pay income tax on the amounts derived from the Linetta operation. [W]here a taxpayer withdraws funds from a corporation which he fully intends to repay and which he expects with reasonable certainty he will be able to repay, where he believes that his withdrawals will be approved by the corporation, and where he makes a prompt assignment of assets sufficient to secure the amount owed, he does not realize income * * *.[Gilbert v. Commissioner,552 F.2d 478, 481 (2d Cir. 1977).] The evidence in this case does not support a finding of a consensual recognition of an obligation to repay. Petitioners took care to keep the formation and operation of Linetta secret from William and Bernard Blinderman, the owners of Blinn, until 1977 when the scheme would be made public through Steven and Brenda's divorce proceedings. When questioned about their resources for certain assets purchased with Linetta funds, they lied. At the time that they embezzled the funds, petitioners clearly had not intent to repay. Having spent the embezzled funds on personal assets and expenses, there was no source from which they could have expected to be able to repay *99 Blinn. When Steven finally did attempt to make restitution after the embezzlement scheme had been uncovered, he lacked the resources to restore half of the embezzled amount. [9]
Brenda's reliance on Gilbert v. Commissioner,552 F.2d 478 (2d Cir. 1977), is misplaced. In Gilbert, the Court held that certain unauthorized withdrawals of corporate funds made by the taxpayer were not taxable income to him. The taxpayer in Gilbert was president, principal stockholder and a director of a corporation from which he withdrew without approval $1,958,000 to buy stock in another corporation in an attempt to effect a merger. The merger would have been highly favorable to the corporation. Accordingly, the funds in Gilbert were used not only for the benefit of the taxpayer but also for the benefit of the corporation. In this case petitioners used the funds solely to pay for personal assets and expenses. *100 There was no possible benefit to Blinn from the withdrawals made in this case. In Gilbert, the taxpayer made clear his lack of intent to retain the funds by immediately informing several of the corporation's officers and directors and by making a complete accounting to all of them within two weeks. In this case petitioners kept their withdrawals secret for over three years. To obtain relief under Gilbert, a taxpayer must recognize the obligation to repay at the time the funds are received. Gilbert v. Commissioner,552 F.2d at 481 n.8. In this case Steven did not recognize his obligation to repay until 1977 when he disclosed the Linetta operation to his father. Accordingly, petitioners are liable for the deficiencies in tax attributable to the funds they embezzled during the years in issue. Brenda also argues that the section 6653(b) addition to tax does not apply to her because no part of petitioners' underpayment was due to fraud on her part. Section 6653(b)(4). The evidence does not support her argument. Brenda was involved in the organization of Linetta and was its secretary. She signed the Linetta signatory card in her maiden name and admitted that she kept petitioners' involvement *101 in Linetta secret from William and Bernard Blinderman. Brenda had complete control over the Linetta account as well as petitioners' joint checking account. She deposited all the Blinn checks into the Linetta account and wrote most of the checks drawn from the Linetta account. She knew that the Linetta funds were used for petitioners' personal expenses. Brenda also benefitted from the embezzled funds. She participated in the use of assets purchased with those funds and enjoyed an improved life-style attributable to the Linetta operation. Because Brenda was an active participant in the Linetta operation and benefitted from the embezzled funds, she is liable for additions to tax for the years in issue under section 6653(b). V. The Statute of Limitations Petitioners have raised a statute of limitations defense. Because we have found that petitioners filed their original joint income tax returns fraudulently with intent to evade tax, no statute of limitations applies in this case. [10] *102 Section 6501(c); Estate of Temple v. Commissioner,67 T.C. 143 (1976); Otsuki v. Commissioner,53 T.C. 96 (1969). To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Respondent in his notice of deficiency dated May 1, 1981, addressed to Steven Blinderman (hereinafter referred to as Steven) and Brenda Blinderman (hereinafter referred to as Brenda) for the taxable years 1975 and 1976 determined deficiencies in income tax in the amounts of $7,499 and $6,952, respectively. Brenda filed a petition in this Court with regard to this notice (docket No. 19949-81). Steven did not file a petition with regard to this notice. Respondent pursuant to an amendment to answer claimed an increased deficiency in income tax in the amount of $13,253 for the 1976 year and additions to tax under section 6653(b) in the amounts of $3,749.50 and $10,102.50 for the 1975 and 1976 years against Brenda. Respondent in his notice of deficiency dated June 28, 1984, addressed to Brenda for the taxable year 1974 determined an addition to tax under section 6653(b) in the amount of $5,278.50. Brenda filed a petition in this Court with regard to this notice (docket No. 33992-84). Respondent in his notice of deficiency dated June 28, 1984, addressed to Steven for the taxable year 1974 determined an addition to tax under section 6653(b) in the amount of $5,278.50. Respondent in his notice of deficiency dated June 28, 1984, addressed to Steven for the taxable years 1975 and 1976 determined deficiencies in income tax in the amounts of 0 and $13,253 and additions to tax under section 6653(b)↩ in the amounts of $3,749.50 and $10,102.50 for the 1975 and 1976 years, respectively. Steven filed a petition in this Court with regard to the above notices (docket No. 33940-84). 2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party. Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party. Parklane Hosiery Co. v. Shore,439 U.S. 322, 326↩ n.4 (1979).
4. Brenda relies on Allen v. McCurry,449 U.S. 90 (1980); Parklane Hosiery Co. v. Shore,439 U.S. 322 (1979); and Baily v. United States,355 F. Supp. 325↩ (E.D. Pa. 1973), to support her argument that respondent should be bound by the issues decided by the Supreme Court of New York in her divorce proceedings. In each of the cases upon which she relies, the party against whom collateral estoppel was asserted was a party to the prior proceeding and had a full and fair opportunity to litigate the issue that had been decided. Because respondent was not a party to the divorce proceedings, none of the cases upon which Brenda relies are relevant to this case.
5. Respondent argues that the amounts received by petitioners from the Linetta operation are constructive dividends and therefore taxable as gross income under sections 61 and 301. Because we have concluded that Linetta was a mere alter ego for petitioners, it is unnecessary to address this argument.
6. Section 6013(e) provides: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. Section 6013(e) was amended by the Tax Reform Act of 1984 with retroactive application to all taxable years to which the Internal Revenue Code of 1954 and 1939 applies. See Pub. L. 98-369, sec. 424, 98 Stat. 801; H. Rept. 98-432, Pt. 2, 1501, 1503, (March 5, 1984). 7. A "substantial understatement" means an understatement that exceeds $500. Section 6013(e)(3)↩. 8. "Grossly erroneous items" include omissions from gross income. Section 6013(e)(2)↩.
9. Petitioners embezzled $112,392.65 from Blinn from 1973 until 1976. Steven returned the money in his bonus account at Blinn and several shares of Blinn stock to the company as restitution. William Blinderman testified that the total value of both of these items was approximately $50,000-$60,000.↩
10. Respondent also contends that the notices of deficiency were timely under section 6501(e). Because we have concluded that section 6501(c) applies in this case, it is not necessary to address this issue.