T.C. Memo. 1997-6


UNITED STATES TAX COURT


KENNETH SIEBERT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17154-94.                    Filed January 2, 1997.


Kenneth Siebert, pro se.

<u>Ann S. O'Blenes</u> and <u>John R. Hunter</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, <u>Judge</u>:  By notices dated June 28, 1994, respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows:

|       |            | Additions to Tax |           |
| Year  | Deficiency | Sec. 6651(a)(1)  | Sec. 6654 |
|-------|------------|------------------|-----------|
| 1988  | $33,616    | $8,404           | $330      |
| 1989  | 44,162     | 10,972           | 2,966     |
| 1990  | 8,376      | 2,094            | 551       |
| 1991  | 8,766      | 2,192            | 504       |
| 1992  | 8,815      | 2,204            | 384       |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are as follows:

1.  Whether petitioner failed to report income for each year in issue;

2.  whether petitioner, pursuant to section 1401, is liable for self-employment tax;

3.  whether petitioner, pursuant to section 6651(a)(1), is liable for additions to tax for failure to file timely Federal income tax returns; and

4.  whether petitioner, pursuant to section 6654, is liable for additions to tax for failure to make estimated tax payments.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Plano, Texas, at the time his petition was filed.

I.  Petitioner's Tax Consulting Practice

A.  In General

During the years in issue, petitioner was a self-employed tax consultant in Dallas, Texas.  Petitioner leased office space

at the law firm of Hercules & Lavery for approximately $400 per month, and he referred to the firm approximately a dozen of his clients who required specialized work. In early 1989, Hercules & Lavery asked petitioner to vacate the leased premises after they discovered that he was holding himself out as a member of their firm.

B. Petitioner's Dealings With James Franz

In January 1987, James Franz hired petitioner to create a retirement plan. He paid petitioner a $10,000 retainer. On December 6, 1988, petitioner incorporated Showwalter, Inc. (Showwalter), under Texas law. Mr. Franz served as Showwalter's sole shareholder and director. Petitioner subsequently created a profit-sharing plan for Showwalter and prepared and filed an application with the Internal Revenue Service (IRS) to determine whether the profit-sharing plan was a qualified plan under the Internal Revenue Code.

C. Petitioner's Dealings With Virginia Shaw

In December 1987, Virginia Shaw hired petitioner to prepare her 1987 tax return. In 1988, she paid him a $5,000 retainer in five $1,000 monthly installments. On August 12, 1988, petitioner filed a request for a 2-month extension of time to file Ms. Shaw's return. Petitioner provided the following reason for his extension request: "As the preparer, I am behind due to audits and tax court cases. The taxpayer should not be penalized

because of my schedule." Petitioner's request was granted, and the return was eventually prepared by petitioner on December 22, 1989.

D. Petitioner's Dealings with Margaret Boals

In January 1988, Mr. Franz received a telephone call from his mother, Margaret Boals. She told him that she had received two notices of deficiency from the IRS demanding a total of $500,000 in delinquent taxes from her husband's estate. Mr. Franz contacted petitioner and on April 13, 1988, took him to see Ms. Boals. During his meeting with Ms. Boals, petitioner suggested that she withdraw all of her money from her financial accounts and transfer it to him. Petitioner told Ms. Boals that the IRS could not seize the money if he held it in his trust account.

Ms. Boals agreed to pay petitioner $150 per hour for his services and, over the course of several weeks, gave petitioner three checks totaling $312,436.05 which petitioner deposited into a newly opened trust account. Petitioner and Ms. Boals agreed that petitioner would use the funds only when Ms. Boals so authorized. Between 1988 and 1989, petitioner wrote, with Ms. Boals' authorization, checks on the account totaling $109,124.50. During the same period, however, petitioner also wrote, without authorization, over $180,000 in checks for a variety of his personal expenses including: (1) Repairs and parts for his BMW

and Jaguar, (2) computer equipment, (3) groceries, (4) rent at Hercules & Lavery, and (5) travel. Petitioner also transferred some of the funds to his wife and daughter.

On February 4, 1992, petitioner was charged with the felony offense of misapplication of fiduciary property. The indictment alleged that petitioner misapplied Ms. Boals' funds for his personal benefit. In June 1992, petitioner was convicted, sentenced to 6 years probation, and assessed a $10,000 fine. The Court of Appeals for the Fifth District of Texas at Dallas upheld petitioner's conviction on August 2, 1995. Petitioner subsequently filed a petition for discretionary review with the Court of Criminal Appeals for the State of Texas.

II. Petitioner's Other Businesses

A. Computers & Stuff, Inc.

On June 13, 1988, petitioner used, without authorization, some of Ms. Boals' money to incorporate under Texas law Computers & Stuff, Inc. (Computers & Stuff). Computers & Stuff was created to sell computer hardware and software to the general public. Petitioner purchased a quarter-page advertisement for Computers & Stuff in the 1988-89 Southwestern Bell Yellow Pages. On December 22, 1989, Computers & Stuff forfeited its right to conduct business in Texas, because it failed to pay Texas franchise taxes. Its corporate charter was subsequently revoked on June 18, 1990.

    B.  Dallas Executive Couriers

    In early 1989, petitioner decided to establish a courier business.  To obtain the necessary financing, petitioner persuaded Mr. Franz on March 23, 1989, to sign a letter of credit.  A letter for ₤60,000 was issued by the Isle of Man Bank and was secured by the Showwalter pension plan.  On April 19, 1989, petitioner incorporated under Texas law Dallas Executive Couriers, Inc. (Executive Couriers).  Executive Couriers operated out of petitioner's office at Hercules & Lavery.  Hercules & Lavery used, and paid petitioner compensation for, Executive Courier's services during 1989.  On October 17, 1990, Executive Couriers forfeited its right to conduct business in Texas, because it failed to pay Texas franchise taxes.  Its corporate charter was subsequently revoked on June 17, 1991.

III.  Respondent's Investigation and Determinations

    After petitioner was convicted of misappropriating Ms. Boals' money, the Dallas district attorney's office notified the IRS of petitioner's conviction and informed it that petitioner may not have reported the misappropriated funds on his Federal income tax returns.  The IRS assigned petitioner's case to Revenue Agent Jesse Luna.  Agent Luna obtained court records from the Dallas district attorney's office.  Based on these records, Agent Luna determined that petitioner had unreported income of $74,000 and $110,000 in 1988 and 1989, respectively.

During the course of his investigation, Agent Luna discovered that petitioner had not filed Federal income tax returns for 1988 through 1992.  Agent Luna contacted petitioner and requested that he produce financial records for those years. Petitioner stated that he would have to speak with his accountant and get back to Agent Luna.  Petitioner, however, failed to contact Agent Luna.  Agent Luna did not make another attempt to contact petitioner, and he failed to independently obtain petitioner's bank records and other financial data.

Agent Luna reconstructed petitioner's income for the years in issue (in addition to the income for 1988 and 1989 from misappropriated funds) using the Consumer Price Index (CPI) Rollover Method as follows:

|  | 1988 | 1989 | 1990 | 1991 | 1992 |
|---|---|---|---|---|---|
| Base year income-1987 | $27,842 | $27,842 | $27,842 | $27,842 | $27,842 |
| x CPI increase | 1.02834 | 1.05846 | 1.10806 | 1.15855 | 1.18601 |
| Gross income | 28,631 | 29,470 | 30,851 | 32,256 | 33,021 |

On June 28, 1994, respondent issued two notices of deficiency to petitioner.  Respondent determined that petitioner was liable for deficiencies of $33,616, $44,162, $8,376, $8,766, and $8,815 for 1988, 1989, 1990, 1991, and 1992, respectively.  The deficiencies included self-employment tax of $5,859, $5,978, $4,359, $4,558, and $4,666 for 1988, 1989, 1990, 1991, and 1992, respectively.

OPINION

I.  Unreported Income

Generally, the Commissioner's notice of deficiency is presumed to be correct, and the taxpayer bears the burden of

proving that it is erroneous.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Because of this presumption of correctness, courts will generally not look behind the notice of deficiency to examine the evidence upon which the determination was made.  <u>Dellacroce v. Commissioner</u>, 83 T.C. 269, 280 (1984). The Court of Appeals for the Fifth Circuit, to which appeal of this case would lie, has noted, however, that "a court need not give effect to the presumption of correctness in a case involving unreported income if the Commissioner cannot present some predicate evidence supporting its determination."  <u>Portillo v. Commissioner</u>, 932 F.2d 1128, 1133 (5th Cir. 1991), affg. in part and revg. and remanding in part T.C. Memo. 1990-68.  If the presumption of correctness does not apply, the Commissioner's determination will be deemed arbitrary, and consequently, she will bear the burden of proving the correct amount of any taxes owed.  <u>Sealy Power, Ltd. v. Commissioner</u>, 46 F.3d 382, 386 (5th Cir. 1995), affg. in part and revg. and remanding in part T.C. Memo. 1992-168.

In her notice of deficiency, respondent determined that petitioner had embezzlement income.  Based on her CPI calculations, she also determined that petitioner had unreported self-employment income from his tax consulting practice and other businesses.  We now address the validity of these determinations.

A.  Embezzlement Income

Respondent determined that petitioner had embezzlement income of $74,000 and $110,000 for 1988 and 1989, respectively. Gross income includes all income from whatever source derived. Sec. 61(a).  When a taxpayer acquires earnings lawfully or unlawfully, without recognition of an obligation to repay and without restriction as to their disposition, taxable income is deemed to have been received, even though the taxpayer may be required to repay the money at a later date.  James v. United States, 366 U.S. 213, 219-220 (1961); North Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932); Mais v. Commissioner, 51 T.C. 494, 498-499 (1968).  Therefore, embezzled funds constitute taxable income to the embezzler in the year of embezzlement. James v. United States, supra at 220.

Respondent has presented predicate evidence to establish that petitioner had embezzlement income in 1988 and 1989.  In 1988, petitioner persuaded Ms. Boals to transfer $312,436.05 into his trust account.  During 1988 and 1989, petitioner used, without Ms. Boals' authorization, over $180,000 of these funds for his personal benefit.  He was subsequently convicted of misappropriating fiduciary property, and his conviction was upheld on appeal.  Therefore, we conclude that respondent has presented predicate evidence to establish that petitioner received embezzlement income in 1988 and 1989.  Accordingly,

respondent's determination is presumed correct, and petitioner bears the burden of proving it erroneous.

Petitioner contends that he earned the embezzled funds as fees for his services. Alternatively, he contends that he borrowed $300,000 from Ms. Boals. Petitioner failed to introduce sufficient evidence to support either contention. Petitioner also contends that because he has filed a petition for discretionary review with the Court of Criminal Appeals for the State of Texas, his conviction is not yet final and may not be used against him. He is mistaken. To be held liable for tax on embezzled income, there is no requirement that there be a prior judicial determination that an embezzlement has occurred. This Court is permitted to make its own independent determination. See, e.g., Snavely v. Commissioner, T.C. Memo. 1994-256; Solomon v. Commissioner, T.C. Memo. 1982-603, affd. 732 F.2d 1459 (6th Cir. 1984); Beaton v. Commissioner, T.C. Memo. 1980-413, affd. 664 F.2d 315 (1st Cir. 1981). We have reviewed the record and determined that petitioner embezzled the funds from Ms. Boals. Accordingly, we conclude that petitioner received embezzlement income in 1988 and 1989 and sustain the deficiencies resulting from that income as determined by respondent.

B. CPI Rollover Method Calculations

Every taxpayer is required to maintain adequate records of taxable income. Sec. 6001. In the absence of such records, the Commissioner may reconstruct the taxpayer's income by any method

that clearly reflects income. Sec. 446(b); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). Because petitioner failed to produce any records, respondent used the CPI Rollover Method to reconstruct petitioner's income for the years in issue. Under this method, income is computed by multiplying the adjusted gross income reported on the taxpayer's most recently filed return by the increase in the CPI, as published by the U.S. Department of Labor, for the year in issue. See Moore v. Commissioner, 722 F.2d 193, 196 (5th Cir. 1984), affg. T.C. Memo. 1983-20. Based on her CPI calculations, respondent determined that petitioner had unreported self-employment income of $28,631, $29,470, $30,851, $32,256, and $33,021 for 1988, 1989, 1990, 1991, and 1992, respectively.

Respondent has established that petitioner engaged in a tax consulting practice during 1988 and 1989. During these years, Ms. Boals paid petitioner $150 per hour for his services. Petitioner rented office space from Hercules & Lavery and referred approximately a dozen of his clients to the firm during this same period. In 1988, Virginia Shaw paid petitioner a $5,000 retainer to prepare her 1987 Federal income tax return. In addition, petitioner requested an extension of time to file Ms. Shaw's return, because he was behind on audits and Tax Court cases. Moreover, petitioner testified that he was a tax consultant during 1988 and 1989, and he knew that he had to file returns for these years. Therefore, we conclude that respondent

has provided predicate evidence, corroborated by petitioner's own testimony, to demonstrate that petitioner received taxable income in 1988 and 1989 from his consulting practice.  Accordingly, the presumption of correctness applies to respondent's CPI calculations with respect to these years, and petitioner bears the burden of proving them erroneous.

Petitioner has failed to provide any credible evidence to carry his burden of proof with respect to these years. Consequently, we hold that petitioner is liable for the 1988 and 1989 deficiencies attributable to respondent's CPI calculations.

Respondent has failed to provide predicate evidence, however, to establish that petitioner received income from his tax consulting practice, Executive Couriers, or Computers & Stuff during 1990, 1991, and 1992.  Therefore, respondent's determinations relating to these years are arbitrary, and she bears the burden of proof.  See, e.g., Senter v. Commissioner, T.C. Memo. 1995-311 (concluding that the Commissioner failed to provide predicate evidence to support her deficiency determinations based on CPI calculations).  Respondent failed to present sufficient evidence that petitioner received income in these years.  Accordingly, we conclude that petitioner is not liable for the alleged deficiencies relating to unreported income in 1990, 1991, and 1992.

II.  Self-Employment Tax

Respondent determined that petitioner, pursuant to section 1401, is liable for self-employment tax of $5,859, $5,978, $4,359, $4,558, and $4,666 for 1988, 1989, 1990, 1991, and 1992, respectively.  Section 1401 imposes a tax on self-employment income.  Self-employment income consists of gross income from any trade or business carried on by an individual less allowable deductions attributable to the trade or business.  Sec. 1402(a).  Respondent's determination that petitioner is liable for self-employment tax is presumed to be correct, and petitioner bears the burden of proving that it is erroneous.  Rule 142(a); Kasey v. Commissioner, 33 T.C. 656, 660 (1960).

Petitioner introduced no evidence relating to the self-employment tax issue.  Therefore, petitioner has failed to carry his burden of proof and is liable for self-employment tax for 1988 and 1989.  He is not liable, however, for self-employment tax with respect to 1990, 1991, and 1992, because we have concluded that there are no deficiencies for those years.

III.  Additions to Tax for Failure To File Timely Returns

Respondent determined that petitioner, pursuant to section 6651(a)(1), was liable for additions to tax for failure to file timely Federal income tax returns.  Section 6651(a)(1) imposes an addition to tax for failure to file a timely return, unless it is

- 14 -

shown that such a failure is due to reasonable cause and not due to willful neglect. Petitioner bears the burden of proving that his failure to file a timely return was due to reasonable cause and not due to willful neglect. Rule 142(a); Baldwin v. Commissioner, 84 T.C. 859, 870 (1985). Petitioner, however, did not dispute his liability for these additions to tax. As a result, petitioner has failed to carry his burden of proof and is liable for the additions to tax for 1988 and 1989. Petitioner is not liable, however, for the additions to tax with respect to 1990, 1991, and 1992, because we have concluded that there are no deficiencies for those years.

IV. Additions to Tax for Failure To Make Estimated Tax Payments

Respondent determined that petitioner, pursuant to section 6654, was liable for additions to tax for failure to make estimated tax payments. Section 6654 imposes an addition to tax for failure to make estimated income tax payments. Petitioner bears the burden of proving that he paid estimated tax or that any of the exceptions apply. Rule 142(a); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner, however, did not dispute his liability for these additions to tax. Therefore, petitioner has failed to carry his burden of proof and is liable for the additions to tax for 1988 and 1989. Petitioner is not liable, however, for the additions to tax with respect to 1990,

1991, and 1992, because we have concluded that there are no deficiencies for those years.

We have considered the other arguments made by petitioner and respondent and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.